In those circumstances, I always say to myself, what would Judge Lurie say? Is it Mr. Pedman-Hobbin? Yes, Your Honor. May it please the Court. Your Honors, this Court should reverse the PTAB decision that claims 1 to 6 of the 945 patent is not unpatentable. The primary finding of the PTAB was that figure 2 is limited to MICR reading in the back office. That finding was the basis for its conclusion that element A of claim 1 and corresponding elements that relate to MICR capture at the point of sale was not disclosed. And it was also the basis for finding that element C of claim 1, which relates to the timing of when you receive and scan a physical check to make a digital image, is done vis-a-vis the crediting or after crediting the merchant's account. Let me ask you a question about the characterization of figure 2 in 945. In your petition for a CBM review, page 78 of the joint appendix, you say a digital image is optional and figure 2 discloses that it can be made before the merchant's account is credited. That's at JA 78. Later on in the petition, at 118, you say figure 2 shows that optionally a digital image of a check can be scanned. In the PTAB's final written decision, page 25 of the joint appendix, it says, according to Bancor, figure 2 discloses that the merchant's account can be credited without imaging the check at all, though imaging the check is optional. In your blue brief on 21, you say that you attempt to clarify that Bancor never argued that back-office conversion does not require an image for the check. And in your blue brief at 4142, you say Bancor, quote, never argued that element 4 of figure 2 shows that it is optional whether the merchant makes an image scan of the check, but only that it is optional whether the merchant sends the image to the third-party payment processor. It looks like those are discrepancies to me. Your Honor, they're not discrepancies. And let me explain in the context of the petition and the other portions you've read. If you read it in context, the distinction between the two is we were never arguing, whether we were inartful about it, we were never arguing that under back-office conversion rules you did not have to make an image of the check. What we were trying to be clear about, and I think those sentences in context do this, is in terms of ACH processing, which is what is in figure 2, where it says in box 4 the image is optional, it is true that for ACH processing what you need is just the MICR information that's read. You do not need the image. And so when we were making that point, it might have been inartful, but we've never argued that under BOC rules that an image itself does not need to be made. And so to the extent that the PTAB or they've argued about this mischaracterization, none of it is relevant to element C of this claim. In other words, making that image has never been the issue. The issue on the timing really is when are you submitting that MICR information so that you can process through the ACH network so that you can see if the timing step, in other words, when you're making the actual image of the check, is after the crediting to the merchant. And so in our petition and throughout our briefing, we've tried to be clear about that, but we've never articulated actually that under BOC rules an image did not have to be made. And let me step back just one second and explain. The fundamental difference between us and the PTAB really is there's a difference in this art and in the patents between reading the MICR information and scanning the check. If you look at the record, in the prior art, when you read the MICR information, what that means is running the check through a reader so that it reads the magnetic information at the bottom of the check. That is then used for ACH processing as in Figure 1 with POP. It could be used in ACH processing as in Figure 2 with POP. As their expert testified at appendix page 502-503, that can be used and has historically been used for check validation. Separately in this art, there is scanning of the actual physical check to make an image. As it says in the background of the patent, that involves actually just using a scanner and creating a digital image. That image has been used in Check 21 to make substitute checks. It is also in Figure 1 as an option that you can have an image of the check. Didn't the PTAB here, because you specifically relied on Figure 2 in your petition, they limited their review to Figure 2 and they didn't consider Figure 1, right? Yes, Your Honor, and really the only reason we're bringing up Figure 1, that combination we're relying on is Figure 2 with random. But when you're looking at Figure 2, the way you can analyze Figure 2 to understand what's being disclosed in Figure 2, as your case law provides, is to give context based on what a person of ordinary skill in the art would understand. That person would understand POP, which is in Figure 1. That person would understand BOC rules, which the patentee admits is prior art. So when you look at those figures, you see that in Figure 1, it tells you exactly where the MICR information is read and if you decide to make an image, where it's done, at the point of sale. In Figure 2… But it's not, you said if you decide to make an image, right? If you decide to make an image. Yes. It's not inherent, it's not… I'm not arguing it is at all. And so in Figure 2, what it tells you is, for the merchant, it's back office conversion, and it tells you the steps you have to do under back office conversion. So under Randall, under your case in Randall, a person of ordinary skill in the art comes to that knowing certain rules about back office conversion. They know you have to read the MICR information, and that's separate from reading the scanned image. The mistake the patent office makes is in concluding that Figure 2 limits it to MICR reading in the back office. Every sentence the patent office analyzes to support that deals only with scanning the image. It does not deal with MICR reading. So if you look at appendix page 20, where they quote Mr. Ceficci, that sentence only deals with scanning, scanning the images. If you look at appendix page 21, again, they quote Mr. Ceficci's testimony. Again, that goes to Figure 2, but again, to scanning the paper checks. If you look at appendix page 23, where they quote the patent, they say the 9405 patent says that in traditional Bach process, merchants scan their checks in the back office. If you look at that sentence at the bottom of column 2, the very next sentence at the top of column 3 says it's a scanner that creates that image. It is then stored with the MICR information. There's nothing in any of the evidence that the PTAB relies upon that a person would find, a reasonable person or any person would find adequate to support where the MICR read is done. It's true that the patent discloses specifics about where the scan of the image is done in the back office. But for the patent office to improperly limit Figure 2 to where the MICR read is done at the back office, there is no basis for it, and the evidence that they've cited to doesn't support it. In fact, the evidence that they did not address would support it. For instance, it's clear from the patent that the back office conversion is a set of rules. Their expert, Mr. Sofici, at appendix page 387, made clear that in his direct testimony, made clear that in back office conversion rules, the MICR read does not have to happen concurrently with the image scan. So what does that mean? If the patent discloses that the scanning of the image has to happen in the back office, a person of ordinary skill in the art, knowing exactly what Mr. Sofici said about the box was known, the MICR read does not have to happen at the same time as the image scan of the check. Similarly, when we deposed Mr. Sofici on this point, he said under the rules, and this is at appendix page 395, he agreed that under BAC, under the plain BAC rules, the MICR read can happen at the point of sale. The patent office ignored all of it, and the evidence the patent office relies on exclusively is on scanning the physical check to make an image, whereas the claim language we're talking about has to do with reading the MICR information from the check for ACH processing. And so those are two different things, and nothing that the patent office has relied upon would be not even sufficient evidence, just not relevant evidence to decide where MICR reading happens. I know this isn't in this case before us, but did you make a 101 argument in your petition? We did, Your Honor. Did the patent office explain why it wasn't instituting on 101? Yes. If I remember correctly, it was because they said there were enough steps done by some of the other people involved in the method for why they didn't think it was, they thought it was patent-eligible subject matter, effectively. Thanks, I was just curious. We mean there were enough steps performed by… I'm sorry, so when we argued that this was a 101 problem under Alice, the patent office didn't grant on that issue. If I remember correctly, the main reason was they believed there were other patents in this area and that there were enough participants. There was the scanner, there was the other pieces of equipment that were involved, the scanning for the image, the MICR reading for the MICR reader, and partners involved. Even though those are all very conventional elements. Yes. We agree, Your Honor, but the patent office did not grant on that issue. Otherwise, that was our focus of our petition, the first ground of our petition. You're into your rebuttal time, just so you know. Your Honor, I'll proceed with my rebuttal. Okay. Mr. Gilbertson. So I get to be the last thing between the court and lunch? Well, other than the rebuttal time, yes. Fair enough, fair enough. There are three more minutes. I'm going out and wash my hair. You were looking forward to that one, I could tell. The board made a factual finding here, made a couple of key factual findings that are what's before the court. The first one has to do with Step A of Claim 1 of our patent. And the factual finding was that Figure 2 did not disclose what Claim 1 of our patent, Step A, refers to about data captured at the merchant's point of purchase. And the board, for that finding, cited the petition, cited Figure 2, cited discussion in the patent about Figure 2, cited expert testimony on that very point, and reached and explained its conclusion. This is dispositive of the case, because that sort of a finding, what does the prior art teach? And what are the differences between the claims and the prior art are factual findings that are reviewed for substantial evidence. And the substantial evidence is what I just mentioned. If you look at Figure 2, you've got this box right in the middle of it. Do you agree that Figure 1 discloses Step A of Claim 1? Figure 1 discloses capturing data at the merchant's point of purchase. Yeah, that's part of the presentation that we made to the board. And that's actually the perfect jumping off point, because one of the points we made to the board, that the board cites in its decision, is the difference between Figure 1 and Figure 2. That in the middle of Figure 2, you have this box that shows the key amount, read micker, and scanned image. And there's a similar box in Figure 1. And in Figure 1, it says point of sale. And in Figure 2, it doesn't say point of sale. It says back office conversion. So that difference seemed significant in evaluating what does Figure 2 disclose. The U.S. Bank's position, of course, now is no, no. The fact that it says back office conversion doesn't mean that that's where it takes place.  Again, U.S. Bank makes that argument in its brief, starting at page 35. Says it again in its reply brief, page 14. And the core of its argument, you'll find at page 37 of U.S. Bank's brief, where it's criticizing the board's decision and saying it's not, that that decision was not supported by substantial evidence. And here's what U.S. Bank tells this court. This finding is not supported by substantial evidence because Figure 2 does not show a system for converting a check in the merchant's back office. It shows an implementation of back office conversion. That's on U.S. Bank's brief at page 37. The problem, especially from the perspective of this court reviewing whether there's substantial evidence for the board's decision, is that the patent's description of Figure 2 is exactly the opposite of what U.S. Bank is telling the court. U.S. Bank says Figure 2 does not show a system for converting a check in the merchant's back office. But when you look at column 5, lines 1, starting at line 1 of our, of the 945 patent, it says Figure 2 shows a prior art system for converting a check in the merchant's back office. It uses the exact same words that U.S. Bank has used, but just says them in the opposite way. So, and you also can find this very similar language at column 4 of our patent, just on appendix page 50, lines 27 through 29, where the patent says, Figure 2 is a schematic representation of a prior art method of converting a check in the back office. So U.S. Bank has pointed to these three things that it says need to happen, key amount, readmaker, and scanned image. And it says, and U.S. Bank is telling you that Figure 2 doesn't say where those tasks are performed. But the two places in the patent that tell you what Figure 2 is do tell you where they're performed. They're performed in the back office. The board cited column 5 starting at, excuse me, starting at line 1 at page 19 of its decision. It quoted the exact words that U.S. Bank is now contradicting in its brief to this court. The board didn't happen to cite column 4, lines 27 through 29, that they provide for virtually the same thing. Exactly the same thing, they just don't use the word merchants, they say back office. In addition to this substantial evidence from Figure 2 itself and our patent's description of Figure 2, the board also relied on the testimony of the expert Bill Sifisi. And you've heard talk in U.S. Bank's brief and some this morning about that. U.S. Bank comes to this court and says on page 11 of its reply, in the fourth bullet point, patent owner's expert's testimony was not that Figure 2 performs MICR and image capture in the back office. It's on page 11 of U.S. Bank's reply in the fourth bullet. That's just flat out wrong. When you look at Mr. Sifisi's testimony, you find that that is exactly what he said. First, at appendix page 514, in paragraph 32 of his direct testimony, Mr. Sifisi says, it is my opinion that a person of ordinary skill in the art would In the back office, a check image scanning device is used to read the front and back of each check, creating an image of both the front and back, and captures the MICR law. At appendix page 526, Sifisi paragraph 46, he says, a person of ordinary skill would see that Figure 2 performs MICR and image capture in the back office, not at the point of purchase. So the very thing that U.S. Bank tells you on page 11 of its reply that the expert didn't say, he says very clearly, multiple times. This is also part of the substantial evidence that supports the board's decision about what Figure 2 discloses. U.S. Bank has made the argument, mentioned it again this morning, attempting to encourage this court to draw a big distinction between the word scanning and the word reading, and wants the court to believe that the word scanning refers only to capturing an image, and that reading is the only way to talk about capturing the MICR information. Of course, as we've just seen, the word capture gets used as well. There's not some magic to the word scanning or the word reading. But even between scanning and reading, the U.S. Bank brief itself, at page 44, talks about scanning MICR information twice. The Randall reference upon which they rely talks about scanning MICR information in the two places we note in our brief, at appendix pages 316 and 324. It also happens to do it at appendix pages 321 and 323, speaking of scanning MICR information. And then even in the 945 patent, and this isn't in our brief, but in the 945 patent in Figure 4, in the element toward the top right of Figure 4, 109, it says, MICR is scanned and associated with amount. So this distinction that counsel is urging just doesn't exist in either the patent or the prior art or U.S. Bank's own brief. U.S. Bank, perhaps to try to get around this challenge of all this substantial evidence that the board had in front of it to make its decision, also argues, makes an argument in its brief in this court. In fact, on page 1, when it's stating the issues, it says, the first issue before this court is whether the board's failure to conduct a proper analysis as required under Randall Manufacturing v. Ray requires reversing. The first thing to note is that there may be a sub-issue there, which is can a party come into this court and ask your honors to reverse the board for failing to apply a case that U.S. Bank never mentioned to the board? In its 77 pages of petition and its 18 pages of reply and in all the oral argument at the trial final hearing, nothing was said about the Randall Manufacturing v. Ray case. As to the substance of the Randall Manufacturing v. Ray case, it doesn't do what U.S. Bank hopes to persuade this court to do, which is to try to look elsewhere at unasserted prior art like figure 1 or like what might happen under a different type of check processing system and use those unasserted references in order to decide what figure 2 discloses. That's not what the Randall Manufacturing v. Ray case did at all. The Randall Manufacturing v. Ray case took a decision from the Board of Patent Appeals and Interferences that allowed some claims relating to partition walls and found that that board had failed to take into account what a person of ordinary skill in the art would have known, what the state of the art was at the time of the invention, when making the decision about whether an ordinarily skilled artisan would be motivated to combine the references. That's at page 1362 of the Randall Manufacturing case. Then on page 1363, this court holds or says that the significance of these unasserted references did not depend upon any attempt to change the combination. In other words, the question there was can you look at what a person of ordinary skill knows as opposed to just looking at the asserted references themselves and evaluate whether the person of ordinary skill would have wanted to combine the references. It should be no surprise that this court reached the conclusion that yes, under KSR, you can look at what a person of ordinary skill knows in deciding whether to combine the references. The difference is, and this is the critical difference, in the Randall Manufacturing v. Ray case, all of the elements that were being challenged in the claim at issue were found in the asserted references. There was one called Aquino and one called Gibbs. Aquino lacked a certain feature that Gibbs had, and the question is whether you can put them together. That's not the question here, especially as to Step A. There's only one reference that's being asserted. There's no combination of references that U.S. Bank is asserting against our patents, Step A. It's only Figure 2. The Randall reference doesn't factor in here. So if U.S. Bank were to prevail on this view, it would change obviousness law into something unrecognizable because you'd have a board that's asking itself the question, does reference A teach element X? And U.S. Bank would have the board ask itself, well, can I find element X in some other background reference? That's not what Randall Manufacturing says. That's not what any precedent from this court has said. The other question that U.S. Bank urges the court to ask is, would it have been legal to find element X or to practice element X within the context of Figure 2? They're invoking what they say is evidence of the back office conversion regulations. The question is not whether it would have been legal to do it. In fact, if we had invented something that was illegal to do, it wouldn't be very useful. That doesn't tell you what Figure 2 itself discloses about where the capture of MICR data is done. The last point on that is the discussion in U.S. Bank's brief and this morning emphasizes testimony that the expert gave, Mr. Sofisi. And when you peel that back, it becomes quite an example of hindsight bias. So the argument that you've heard, it's at page 32 of U.S. Bank's brief, that Mr. Sofisi's testimony that the rules didn't require you to do MICR capture in the back office. Mr. Sofisi's testimony on this point was not simply his own unsupported opinion. For this fact, Mr. Sofisi quotes from a report by Celent, a well-respected research and consulting firm. This is at appendix pages 503 and 504. That's the Sofisi testimony they're citing. When you go to appendix pages 503 and 504 and see what Mr. Sofisi is actually citing from Celent, he's citing Celent's discussion of Solutrans, my client's invention. And in that discussion, on page 504 of the appendix, the report refers to this model first introduced by Solutran and says that this approach may be hard to beat, which turns out to be true. But the very evidence that U.S. Bank is urging this court to use to invalidate our patent is evidence that's invoking the fact that Solutran came up with this first. It wasn't, from the face of the report, something that a person of ordinary skill would already have known. As to step C, and I see my time is coming to a close, the mischaracterization of figure two that was the subject of a colloquy at the beginning of the argument is not just inartful stating on occasion or two. As we lay out in our brief, it was over and over and over. And it was not only an egregious mischaracterization. It was a relevant one because it was the core of their position on combining the references and on this reordering argument that they made. That was a fair basis on which the board made a decision to reject U.S. Bank's position as to step C. Thank you. Your Honor, I'm going to start with Randall. Just because the legal error is in Randall, this court made clear that when the board is looking at the prior art, they have to look at it through the context of a person of ordinary skill in the art. And what they specifically point to and they say is you have to look at the background knowledge possessed by a person of ordinary skill in the art. And in this case, when you're looking at figure two and you see the words back office conversion, the patent itself tells you at the bottom of column two, which is your appendix 49, that back office conversion is a set of rules that have been passed. In fact, they even quote the term back office conversion just as it is in column two. And what that provides is a set of rules that you know apply to this. And one of those rules is what Mr. Sofici testified to, which is you can read the MIQRA information at the point of sale. And it also tells you that the reading of the MIQRA information and scanning of the image don't have to happen concurrently. That is knowledge, that is context that provides for reading figure two. If you look at the evidence that they and the patent office simply fail to do that, the patent office never recognizes that POC allows for MIQRA reading to happen at the point of sale. The patent office never recognizes the fact that the BOC rules, the back office conversion rules themselves, allow for the MIQRA reading to happen at the point of sale or in the back office. The evidence that they rely on from Mr. Sofici, if you look at it, for example, on column 46, I'm sorry, on paragraph 46, which is appendix page 526, he's quoting from the patent. And every sentence they quote from the patent, I gave you the three pages from the board opinion, but every sentence they quote, whenever he's analyzing and he's quoting from the patent, each of those sentences only go to scan. They never go to the location of where the MIQRA is read. And the importance of that is the claim and limitation we're all looking at is element A, which talks about MIQRA reading. It is not talking about scanning the check. And the only time they combine, the only sentence with regard to figure two where they combine the two, which is in paragraph 46, Mr. Sofici quotes, he has part of a sentence where he says, which merchants scan their checks in a back office typically at the end of the day. The scanners capture an image of the check and store the image with the MIQRA data from the check. So the scanners capture the image of the check. They store it with MIQRA data. There's nothing in this patent about figure two where they say where the MIQRA data has to be actually captured. And the way figure two is set up, because it says back office conversion, that doesn't say the location is in the back office. The patent itself tells you at the bottom of figure two, quote, back office conversion is the set of rules that NACHA passed. So using Randall and what's in the patent, the only real interpretation of figure two is to say figure two discloses both capturing MIQRA information at the point of sale or in the back office. The evidence that the patent office explicitly relies on in its order just does not support its conclusion that back office and for MIQRA reading it must happen in the back office. I think with that, I'll stop. Thank you, counsel. If there's matters, we'll stand some time.